**GEMINI INSURANCE CO. et al.**

v.

**S & J DIVING, INC., et al.**

**CIV.A. No. H–05–661.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 25, 2006.

George T. Jackson, Burck Lapidus et al., Houston, TX, for Gemini Insurance Company.

Robert Hayden Burns, Liskow & Lewis, Houston, TX, for S & J Diving Inc., Stanley Jones, and Patricia Jones.

July 18, 2006.

### MEMORANDUM AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT

MILLOY, United States Magistrate Judge.

This matter was referred by United States District Judge Vanessa D. Gilmore for full pretrial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #30). Pending before the court are cross-motions for summary judgment which were filed by Plaintiff Gemini Insurance Company ("Plaintiff," "Gemini") and Defendants S & J Diving, Inc. ("S & J"), Stanley Jones, and Patricia Jones (collectively, "Defendants").[1] (Plaintiff's Motion for Summary Judgment ["Plaintiff's Motion"], Docket Entry #35; Defendants' Motion for Summary Judgment ["Defendants' Motion"], Docket Entry #28). Each party has filed responses and replies to the competing motions. (Plaintiff's Response to Motion for Summary Judgment ["Plaintiff's Response"], Docket Entry #34; Defendants' Reply to the Response and Summary Judgment Motion of Gemini Insurance Company ["Defendants' Reply"], Docket Entry #40; Plaintiff's Reply to the Reply Filed by S & J Diving, Inc., Stanley Jones and Patricia Jones ["Plaintiff's Reply"], Docket Entry #45; Defen-

---

1. On Plaintiff's motion, Defendant Barbara Hauenstein, as next friend of her granddaughter, Jane Doe, a minor child, was dismissed as a defendant on September 21, 2005. (Docket Entry #23).

dants' Reply to Gemini's Summary Judgment Reply ["Defendants' Sur–Reply"], Docket Entry # 47). Before this court, the parties dispute the extent of Gemini's duties under an insurance policy issued to the defendant company, S & J Diving. After considering the pleadings, the evidence, and the applicable law, it is RECOMMENDED that Plaintiff's motion be GRANTED, and that Defendants' motion be DENIED.

## Background

Sometime in the early morning hours of June 30, 2002, Barbara Hauenstein's twelve-year-old granddaughter was abducted from a camp site and sexually assaulted. (Defendants' Motion at Exhibit ["Ex."] 3). At the time, the child and her mother were attending a three-day outdoor rock concert and motorcycle rally, the "Texas Tea Party." This event, which took place on James Chapman's ranch in Medina County, Texas, was produced by an entity called Pajama Productions, Inc. ("Pajama Productions"). Before the rally, Chapman had signed a lease agreement, for the use of his property, with the Texas Motorcycle Rights Association and Pajama Productions. (Plaintiff's Reply at Ex. C). The agreement required the production company to obtain appropriate insurance, and to indemnify the ranch owner from any liability in the case of specified negligent and intentional conduct, as well as to comply with all applicable laws during the event. (Id.).

Following the assault, an investigation determined that it was a Pajama Productions employee who had kidnapped the child. (See Defendants' Motion at Ex. 3). Subsequently, Hauenstein, on behalf of her granddaughter, filed suit in a Harris County district court, naming as defendants the Texas Motorcycle Rights Association, Inc.,

Chapman, individually, and Pajama Productions, Inc., and others.[2] Among the defendants in her original state court petition, Hauenstein listed Stanley Jones, principal shareholder in Pajama Productions, Inc. (Plaintiff's Reply at 4 & Ex. A, B). Following service of the suit, Pajama Productions gave notice of the claim against it, and Jones individually, to its insurance carrier, Scottsdale Insurance Company. (Id. at 4 & Ex. A). That company agreed to provide a defense to those two state court defendants. (Id.). As the case progressed, Hauenstein amended her allegations a number of times. Finally, in her fourth amended petition, Hauenstein included Stanley Jones's wife, Patricia; S & J Diving, Inc.; M/V Aries, Inc.; and Deep Sea Champion, Inc., as additional defendants purportedly responsible for the assault on her granddaughter. (Defendants' Motion at Ex. 3).

It is that final state court petition that has brought these parties here on Plaintiff's request for a declaratory judgment. The newly added defendants, S & J Diving, Inc., and its subsidiaries, M/V Aries, Inc., and Deep Sea Champion, Inc., are all corporate entities which are identified in one way or another with Stanley Jones. It is Jones's link to each of those businesses that led Hauenstein to add them as defendants in her state court action. For instance, Stanley Jones is the sole shareholder, president, and a director of S & J Diving, while Patricia Jones serves as secretary-treasurer of the company. (Id. at 4 & Ex. 4). At the time the fourth amended petition was filed, S & J Diving, Inc., had an insurance policy in place which it had obtained from Plaintiff Gemini Insurance Company. (Plaintiff's First Amended Original Complaint ["Complaint"] at 3;

**2.** *Barbara Hauenstein as Next Friend of Jane Doe, a Minor vs. Texas Motorcycle Rights Association, Inc., Pajama Productions, Inc. &* *James Chapman,* Cause No.2002–55763 (295th Judicial Dist. Ct. of Harris County, Tex.).

Defendants' Motion at Ex. 2). Once it was served with the amended petition, S & J Diving gave the insurer notice of the claim and demanded that it defend the corporation and indemnify it if found liable on the state court allegations. (Complaint at 5). Although Gemini did provide a defense to S & J Diving in the state court proceedings, it did so while giving notice that it reserved its right to contest whether Hauenstein's claims were, in fact, covered by the applicable policy. (*See id.*). Because Hauenstein's liability theories as to each of these defendants are detailed in her state court petition, it is critical to review that pleading in the context of the pending insurance dispute.

From the outset, Hauenstein alleged that Pajama Productions, Inc., and Jones, individually, were obligated to provide adequate security at the concert to ensure the safety of the participants. (Defendants' Motion at Ex. 3). In fact, Hauenstein claimed that those defendants were aware that a large crowd was expected at the rally, that alcohol would be available, and that they had been advised that the security plan for the event was inadequate. (*Id.*). Further, she claimed that even the minimal security force that had been engaged was allowed to go off duty at midnight, and it was during the early morning that the assault on her granddaughter took place. (*Id.*). In her last state court pleading, Hauenstein claimed that it was Jones, individually, who was responsible for obtaining adequate security and that Pajama Productions, Inc., is merely his alter-ego. (*Id.*). On that same theory, apparently, Hauenstein alleges that all of the other entities affiliated with Jones, particularly S & J Diving, Inc., and its subsidiaries, M/V Aries, Inc. and Deep Sea Champion, Inc., are likewise alter-egos of Jones and Pajama Productions, Inc. (*Id.*). Hauenstein claims that each of these entities was created merely to avoid legal obligations, and as such was a shell corporation fraudulent-

ly devised to evade financial responsibility for the injuries her family suffered. (*Id.*). Perhaps this allegation is better understood by direct reference to her pleadings:

> The separate corporate identity of Pajama Productions, Inc. should be disregarded and the Defendants should be treated as one entity to prevent the use of the corporate fiction as an unfair device to inflict injustice on the twelve year old minor Plaintiff. Defendant Pajama Productions, Inc. was used merely as a sham to perpetuate a fraud; it was organized and operated as a mere tool or business conduit of Stanley Jones, Patricia Jones, M/V Aries, Inc., Deep Sea Champion Inc., and/or S & J Diving, Inc.; it was used to evade a legal obligation; it was inadequately capitalized so as to work an injustice; and because Pajama Productions, Inc. and one or more of the Defendants they [sic] were operated as a single business entity.

(*Id.*). Ultimately, all parties to the state court lawsuit settled Hauenstein's claims. Gemini now asks this court to determine its obligations to S & J Diving and to Stanley and Patricia Jones, individually, as a result of the sexual assault which occurred during the "Texas Tea Party," in June 2002. (Defendants' Motion at Ex. 1; Plaintiff's Motion at 19–20).

Following a review of Plaintiff's request for a declaratory judgment, the motions and responses filed by the parties, the evidence submitted, and the applicable law, it is recommended that Gemini's motion for summary judgment be granted, and that the motion by Defendants be denied.

**The Declaratory Judgment Act**

■ The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such dec-

laration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). The United States Supreme Court has characterized the Declaratory Judgment Act, repeatedly, as an "enabling" one, " 'which confers a discretion on the courts rather than an absolute right upon the litigant.' " *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (quoting *PSC v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). The Court has explained, as well, that " 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.' " *Id.* (quoting *Wycoff Co.*, 344 U.S. at 243, 73 S.Ct. 236). Disputes relating to insurance coverage are often resolved in an action for declaratory judgment. *See Harris v. United States Fidelity & Guaranty Co.*, 569 F.2d 850, 852 (5th Cir. 1978). It is well established, however, that § 2201 is merely procedural, and that it extends only to those controversies within the jurisdiction of the federal courts. *See In re B–727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001); *Gaar v. Quirk*, 86 F.3d 451, 453– 54 (5th Cir.1996); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1176–77 (5th Cir. 1984). For that reason, federal courts may not entertain declaratory judgment actions unless there is an independent basis for subject matter jurisdiction. *See id.* at 1177. As the present action is based on diversity of citizenship, under 28 U.S.C. § 1332, the jurisdictional requirements are satisfied, and Gemini's request for declaratory relief is properly before this court.

**Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party "bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' " *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir.2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir.2003). The party moving for summary judgment " 'must demonstrate the absence of a genuine issue of material fact,' but 'need not negate the elements of the nonmovant's case.' " *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)); *see Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir.1996). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *See Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.2001); *Little*, 37 F.3d at 1075. When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in its pleadings. *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349–50 (5th Cir. 2005); *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). If the movant does meet its burden, the non-movant "must 'go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.' " *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075); *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir.2005); *Taita Chem. Co., Ltd.*, 246 F.3d at 385. Further, the non-movant " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see Boudreaux,* 402 F.3d at 540.

To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *See Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir.2000); *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994). In deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Taita Chem. Co., Ltd.,* 246 F.3d at 385. However, " 'Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Stahl v. Novartis Pharms. Corp.,* 283 F.3d 254, 263 (5th Cir.2002) (quoting *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548). If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505; *Wheeler v. Miller,* 168 F.3d 241, 247 (5th Cir.1999).

**Discussion**

 This case presents a relatively straight-forward question of contract interpretation in the context of an insurance company's alleged duty to defend and indemnify its insured from a state court lawsuit.[3] It is well settled that insurance policies are contracts which are subject to the same rules of interpretation generally applicable to all contracts. *See American Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003); *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex.2003). The "primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342 (Tex.2006); *accord Frost Nat'l Bank v. L&F Distrib., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). "To discern this intent, we 'examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.' " *Seagull Energy E & P, Inc.,* 207 S.W.3d 342 (quoting *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)); *accord Frost Nat'l Bank,* 165 S.W.3d at 312. " 'No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.' " *Seagull Energy E & P, Inc.,* 207 S.W.3d 342 (quoting *Coker,* 650 S.W.2d at 393). "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law." *Frost Nat'l Bank,* 165 S.W.3d at 312; *see SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005); *Sink,* 107 S.W.3d at 551. However, "if it is 'subject to more than one *reasonable* interpretation,' " the contract "is ambiguous and will be interpreted in the manner that 'most favors coverage.' " *Id.* (quoting *McKee,* 943 S.W.2d at 458) (emphasis in original); *see Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 643 (Tex. 2005).

---

**3.** The parties do not dispute that Texas law governs this case, which is based on the court's diversity jurisdiction. *See Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 474 (5th Cir.2006); *International Ins. Co. v. RSR Corp.,* 426 F.3d 281, 291 (5th Cir.), *aff'd,* 148 Fed.Appx. 226 (5th Cir.2005).

██ Under Texas law, an insurer has a clear duty to defend its insured against a lawsuit and to indemnify its insured for any damages incurred, if the offending conduct is covered by the applicable policy. *See Reyna,* 401 F.3d at 350; *Utica Nat'l Ins. Co. of Tex. v. American Indem. Co.,* 141 S.W.3d 198, 201 (Tex.2004) (citing *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997)). However, these two duties are recognized to be entirely distinct and separate, and, as such, must be evaluated individually. *See id.* at 203 (citing *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002)); *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). For instance, the duty to defend depends on the factual allegations in the pleadings when compared to the policy language itself. *See Hallman,* 159 S.W.3d at 643 (citing *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965)); *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 847–48 (Tex.1994). The duty to indemnify, on the other hand, arises from the actual facts that are developed which establish liability in the underlying suit. *See Heyden Newport Chem. Corp.,* 387 S.W.2d at 25. For that reason, it is easy to see that, "[t]he duty to defend is broader than the duty to indemnify." *Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 528 (5th Cir.2004).

██ Further, in determining whether the duty to defend has been triggered in a particular instance, the court's inquiry is limited to the "four corners" of the insurance policy and the "four corners" of the allegations in the underlying complaint. *See Reyna,* 401 F.3d at 350 (citing *Northfield Ins. Co.,* 363 F.3d at 528); *Merchants,* 939 S.W.2d at 140. This limited inquiry is often referred to as the "eight-corners" rule, or the "complaint allegation"

rule. *See Reyna,* 401 F.3d at 350; *Northfield Ins. Co.,* 363 F.3d at 528; *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.,* 99 F.3d 695, 701 (5th Cir.1996). Under the eight-corners rule, a determination of the insurer's duties to its insured, if any, begins with an examination of the policy at issue. *See Reyna,* 401 F.3d at 350; *Canutillo Indep. Sch. Dist.,* 99 F.3d at 700. It is the insured's burden to show "that a claim is potentially within the scope of coverage." *Reyna,* 401 F.3d at 350; *see Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996). On the other hand, the insurer bears the burden to show " 'that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule.' " *Reyna,* 401 F.3d at 350 (quoting *Northfield Ins. Co.,* 363 F.3d at 528); *see Canutillo Indep. Sch. Dist.,* 99 F.3d at 701. Further, an insurer's duty to defend is determined by the language of the insurance policy and a liberal interpretation of the allegations in the pleadings. *See Reyna,* 401 F.3d at 350; *Merchants,* 939 S.W.2d at 141. But, in reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages, rather than on the legal theories alleged. *See id.* (citing *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged which determines coverage but the facts giving rise to the alleged actionable conduct")). Here, unless the pleadings in the Hauenstein lawsuit allege facts that trigger coverage under the policy, Gemini has no duty to defend Defendants against the claims raised in that action. *See id.*

██ And, as this litigation is centered on the obligations, if any, that Plaintiff

owes to Jones and his business interests, the obvious starting point is the contract between the parties. The parties agree that Gemini issued a commercial general liability policy to S & J Diving, Inc., under policy number VIGP 002677 ("the Policy"). (Complaint at 3; Defendants' Motion at Ex. 2). The Policy term was from June 30, 2002, to June 30, 2003. (Defendants' Motion at Ex. 2). Apparently then, the parties do not dispute that, if coverage for the Hauenstein event is available, the policy was in place at the time of the assault. Whether coverage is available for that event, of course, is necessarily dictated by the contract's terms. As with most general liability policies, certain acts and activities are excluded, and like any other contract, the terms of coverage are limited by the agreement of the parties.

In this particular policy, the insureds are designated as the corporate entity, S & J Diving, Inc.; its "executive officers and directors," to the extent of their duties as officers or directors; and its "employees," to the extent they may be liable for acts "within the scope of their employment." (Defendants' Motion at Ex. 2). On the declarations page of the policy itself, S & J Diving is described as a "diving contractor/inspections/sunvoy [sic] & repair docks & vessels." (Id.). Further, in designating the policy terms, S & J Diving, Inc., is classified, for purposes of the premium charged, as "Diving—Marine; Inspections and Appraisal Companies—Inspecting for Insurance or Valuation Purposes; Ship Repair or Conversion; and Carpentry NOC." (Id.). Finally, there is a provision, designated as "common policy declarations," which makes clear that the policy declarations, the property coverage, and the conditions and endorsements are to be considered together, as the complete agreement of the parties.[4] (Id.).

Pointing to these policy provisions, Gemini insists that it owes no duty to defend, much less to indemnify, S & J Diving for any of the claims that arose out of the assault during the Texas Tea Party. Further, Gemini relies on those provisions for its contention that its duty to defend Stanley and Patricia Jones, individually, is limited to any liability that might arise from their actions as officers or directors of the corporate entity. Plaintiff is adamant that absolutely nothing in the Hauenstein petition triggers an obligation on its part to those individuals. (Plaintiff's Motion at 9). Defendants, however, maintain that there is no express exclusion in the policy which would obviate coverage for conduct during the motorcycle rally, and since not expressly excluded, the coverage is available. (Defendants' Motion at 8–10). From that premise, Defendants argue that the state court petition alleges that S & J Diving, its subsidiaries, and the Joneses, are entwined with Pajama Productions, Inc., to the extent that the production company is the alter-ego of the marine surveyors and its officers and subsidiaries. (Id. at 6–7). Defendants insist that, because this alter-ego theory is delineated in the state court petition, it triggered Gemini's duty to defend the dive company in the state court lawsuit. It argues further that, because the underlying lawsuit has been settled, Gemini cannot now come before this court and question whether any indemnification duty exists, as Hauenstein's alter-ego theory was never subject to legal inquiry. (Id. at 10).

---

4. The Common Policy Declarations page states as follows:

> These common policy declarations, and if applicable, the commercial property coverage, the commercial general liability declarations together with the common policy conditions, coverage part(s), form(s) and endorsements, if any, issued to form a part thereof, complete the above numbered policy.

(Defendants' Motion at Ex. 2).

Clearly, Gemini owes a duty to defend these Defendants only if the events that form the basis of the underlying lawsuit are covered by the terms of the policy. *See Hallman,* 159 S.W.3d at 643; *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *Garcia,* 876 S.W.2d at 847–48. Under that policy, Gemini agreed to defend and indemnify S & J, and the Joneses as directors, officers, and/or shareholders, only to the extent their conduct was covered by the agreement, or the actions taken were to further the purpose of the corporation. (Defendants' Motion at Ex. 2). It is important to emphasize that, in the declarations, S & J is described, explicitly, as a company engaged in diving, and other marine related operations. (*Id.*). Indeed, the policy premiums that Defendants agreed to pay for the insurance coverage are based on the risks associated with a marine business. The insurance cost to S & J was never premised on the activities central to the Texas Tea Party—a motorcycle rally and outdoor music festival. (*Id.*). Moreover, when purchasing the policy, S & J stipulated to the following facts:

> By accepting this policy, [you] agree:
> a. The statements in the Declarations are accurate and complete;
> b. Those statements are based upon representations you made to us; and
> c. We have issued this policy in reliance upon your representations.

(*Id.*). In this instance, the policy declarations and exclusions, when read together, reveal a clear intent by the parties to contract for liability insurance coverage for activities related only to marine survey operations. It is equally clear that the plain language of the policy characterizes S & J as a diving company; S & J agreed that such a description of its business operations was accurate and complete; and, Gemini relied on those representations in setting the premiums and issuing the poli-

cy. It is likewise reasonable to conclude that S & J's "declaration" of its business purpose limits the available coverage to a marine operation's typical undertakings.

▮▮▮ And, contrary to Defendants' contentions here, the exclusions detailed in an insurance policy are not read in a vacuum. *See Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 641 (5th Cir.1999); *Utica Nat'l Ins. Co. of Tex.,* 141 S.W.3d at 202. "[A]n exclusion's purpose is to remove from coverage an item that would otherwise have been included." *Schaefer,* 124 S.W.3d at 160 (citing *Liberty Mut. Ins. Co. v. American Employers Ins. Co.,* 556 S.W.2d 242, 245 (Tex.1977)). For that reason, it does not follow that silence on a particular "item" is intended to confer coverage in a context completely unrelated to the parties' original agreement. *See id.* Instead, the parties' intent is to be determined by construing "the policy as a whole." *Utica Nat'l Ins. Co. of Tex.,* 141 S.W.3d at 202. In this case, a reasonable reading of the entire policy limits the coverage available to Defendants to the business purpose declared when the contract was negotiated. *See id.* It is not reasonable to conclude that the policy covers any and all activity, not specifically excluded, when the insured negotiated as, and described itself to be, a marine operation. On this matter, Defendants have not cited any law that permits such an interpretation, nor has the court uncovered any. Further, it is elementary to any insurance dispute to underscore that the court cannot interpret a contract in a way that allows for coverage beyond the policy's own terms. A court "may neither rewrite the parties' contract nor add to its language." *Schaefer,* 124 S.W.3d at 162 (citing *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965)). Defendants here are bound to the terms of the contract they negotiated with Gemini, and are

owed no greater or lesser duties from the insurer.

Because Hauenstein's "petition does not allege facts within the scope of coverage, [the] insurer is not legally required to defend a suit against [the] insured." *King,* 85 S.W.3d at 187. Likewise, an insurer has no duty to indemnify the insured for claims arising from conduct outside the policy's scope. *See Northfield Ins. Co.,* 363 F.3d at 528–29; *Griffin,* 955 S.W.2d at 84. Here, Gemini had no duty to defend or indemnify S & J on the claims made in the state court lawsuit.

In its declaratory action, Gemini also seeks reimbursement for the funds it expended in the defense and settlement of Hauenstein's claims against S & J and the Joneses. (Complaint at 10–11). Here, the record is silent on whether the parties ever agreed to such reimbursement if Gemini were to succeed on its claim. In support of its claim for reimbursement, Gemini cites *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.,* 48 Tex. Sup.Ct. J. 735, 2005 WL 1252321 (Tex. May 27, 2005) (pet. for reh'g granted). In that case, the Texas Supreme Court appears to retreat from its earlier position "that the only circumstance under which an insurer may obtain reimbursement from an insured for settlement payments when there is no coverage is when there is an express agreement that there is a right to seek reimbursement." *See id.* at *6 (citing *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County,* 52 S.W.3d 128 (Tex. 2000)). However, the court granted a rehearing of the case, which remains pending, leaving the state of the law unsettled. For these reasons, the court reserves decision on this issue until a future date, after the Texas Supreme Court has issued its decision on rehearing in *Excess Underwriters,* and the parties have had the opportunity to submit briefing on this issue.

As a final matter, Gemini's two remaining claims were given scant attention in the summary judgment pleadings and may have been abandoned. In an abundance of caution, however, the court notes that Gemini sought certain declarations that have now been rendered moot by the settlement, including the matter of punitive damages. (Complaint at 9–10). In addition, Gemini sought an award of attorneys' fees for its prosecution of this declaratory judgment action. (*Id.* at 11). It is well settled that, in a diversity case, the Federal Declaratory Judgment Act "does not itself independently authorize the award of attorney's fees." *Travelers Indem. Co. v. Citgo Petroleum Corp.,* 166 F.3d 761, 772 (5th Cir.1999). Instead, the court must look to the relevant state law. *See id.* (citing *Utica Lloyd's of Tex. v. Mitchell,* 138 F.3d 208, 210 (5th Cir.1998)). In its claim for attorneys' fees, Gemini relied on section 37.009 of the Texas Civil Practice & Remedies Code, a provision of the Texas Declaratory Judgment Act that allows for an award of attorneys' fees. (Complaint at 11). But the Fifth Circuit has explicitly ruled that section 37.009 is "procedural rather than substantive, and therefore it does not authorize an award of costs in a federal court declaratory judgment diversity action." *Travelers Indem. Co.,* 166 F.3d at 772 (citing *Mitchell,* 138 F.3d at 210). Gemini does not identify another state law ground to justify an award of attorneys' fees, nor has it made any effort to rebut Defendants' argument that they are not permitted in this case as a matter of law. Consequently, the court recommends that Gemini's request for attorneys' fees be denied.

### Conclusion

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED,** and that Defendants' motion be **DENIED.**

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 80–5, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, **and** to the chambers of the undersigned, Room 7007.

July 18, 2006.

### ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

GILMORE, District Judge.

The Court has reviewed the Memorandum and Recommendation (Instrument No. 49) signed by Magistrate Judge Mary Milloy on July 18, 2006, regarding **Instrument Nos. 28 and 35**. Defendants timely filed objections. The Court has reviewed the Memorandum and Recommendation and objections and made a de novo review of the Magistrate Judge's recommended dispositions to which objections were raised, Rule 72(b), Fed.R.Civ.P.; 28 U.S.C. § 636(b)(1)(C); *McLeod, Alexander, Powel & Apffel P.C. v. Quarles*, 925 F.2d 853, 855 (5th Cir.1991), and after consideration of the applicable law, is of the opinion that said Memorandum and Recommendation should be adopted by this Court. It is therefore

ORDERED, ADJUDGED and DE-CREED that United States Magistrate Judge Milloy's Memorandum and Recommendation is hereby adopted by this Court. IT IS FURTHER

ORDERED, ADJUDGED and DE-CREED that the Plaintiff shall file a supplemental brief within ten days of the date of this order indicating whether there was an express agreement that they had the right to seek reimbursement. If there is no such agreement, the case will be administratively closed and the Plaintiff will have the right to move for reinstatement to seek a final resolution on the issue of reimbursement within thirty days of the date that the Texas Supreme Court issues its' opinion in *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 48 Tex.Sup.Ct.J. 735, 2005 WL 1252321 (Tex. May 27, 2005)(pet. for reh'g granted). A copy of this order should be attached to any motion to reinstate.

The Clerk shall enter this Order and provide all parties with a true copy.