2020 IL App (1st) 19-1772-U

FIRST DISTRICT
FIRST DIVISION
October 19, 2020

No. 1-19-1772

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) ) | Cook County |
| v. | ) ) | No. 14 CH 00949 |
| TRAPANI CONSTRUCTION COMPANY, INC., | ) ) | Honorable Sophia H. Hall, |
| Defendant-Appellee. | ) ) | Judge Presiding. |
| | ) ) | |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, | ) ) ) | |
| Third-Party Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant-Appellant. | ) | |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Walker and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Insurer had a duty to defend against claims asserting "property damage caused by an occurrence" and a duty to indemnify for a "covered loss made in reasonable anticipation of litigation." Prejudgment interest properly awarded.

¶ 2      In this insurance coverage case, defendant West Bend Mutual Insurance Company (West Bend) appeals the trial court's finding that it had a duty to defend and indemnify plaintiff Trapani Construction Company, Inc. (Trapani Construction) and third-party plaintiff National Fire Insurance Company of Hartford (National Fire) for damages caused by construction defects under a commercial general liability policy (CGL). On appeal, West Bend argues there was no duty to defend because there was no "property damage caused by an occurrence." West Bend also claims it had no duty to indemnify for amounts paid to settle the underlying litigation, arguing that the settlement did not relate to a "covered loss made in reasonable anticipation of litigation." West Bend further disputes that Trapani Construction and National Fire were entitled to prejudgment interest because prejudgment interest was not requested in the complaint and the amount of defense costs incurred could not be easily calculated. For the following reasons, we affirm.

¶ 3                      BACKGROUND

¶ 4      The Wing Street of Arlington Heights Condominium ("Condominium") is a 9-story residential condominium complex, consisting of 71 residential units. Trapani Construction was the Condominium's general contractor. Gregory Trapani was a manager of Village Green, LLC, which was the developer and seller of the condominium units. Subcontractor A.L.L. Masonry Construction Company (A.L.L. Masonry) provided masonry work and subcontractor ATMI Dynacore, LLC (ATMI) installed balcony decks and wall panels at the Condominium. The Wing Street of Arlington Heights Condominium Association ("Association") was the governing body of the Condominium. On April 12, 2005, the Board of Directors of the Wing Street of Arlington Heights Condominium Association (Board) gained control of the Association after the Condominium's completion. The Board was the governing body for the Association.

¶ 5      National Fire issued a CGL policy to Village Green as the named insured. West Bend issued

a CGL policy to A.L.L. Masonry and ATMI. The West Bend policy included an "ADDITIONAL INSURED – CONTRACTOR'S BLANKET" endorsement, stating that an insured includes "any person or organization (called an additional insured) whom you are required to add as an additional insured on this policy under a written contract or written agreement."[1] The insurance provided to the additional insured included coverage for liability arising out of A.L.L. Masonry or ATMI's work for that additional insured or the additional insured's general supervision of A.L.L. Masonry and ATMI's work.

¶ 6        The West Bend policy included the following standard CGL provisions:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.

\*\*\*

(b) This insurance applies to 'bodily injury' and 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

(2) The 'bodily injury' or 'property damage' occurs during the policy period."

The West Bend CGL policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" was defined

---

[1]In the pleadings, West Bend asserted that Trapani Construction was not entitled to coverage under the CGL policy issued to ATMI, alleging that ATMI's contract with Trapani Construction was oral.

as: "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it."

¶ 7 After the Board gained control of the Association, it began noticing water infiltration and damage to the interior of the building's common areas and owner units. On April 20, 2010, the Board[2] filed a multiple count complaint alleging construction defects against Village Green, Trapani Construction, Greg Trapani, A.L.L. Masonry, and others (*Wing Street* litigation).[3] The Board alleged that construction defects caused damage to the common areas of the Condominium. The Board amended its complaint numerous times and added allegations of property damage to the personal property of unit owners in the seventh amended complaint. On November 24, 2015, the Board filed an eighth and final amended complaint,[4] which pled the following in relevant part:

"ALLEGATIONS COMMON TO ALL COUNTS

\*\*\*

6. The Plaintiff, the Board of Directors of the Wing Street of Arlington Heights Condominium Association, \*\*\* is a proper party for and on behalf of the unit owners and THE ASSOCIATION to institute the instant proceedings.

\*\*\*

COUNT VII
BREACH OF IMPLIED WARRANTY OF HABITABILITY
(VILLAGE GREEN, LLC, [ ] GREGORY B. TRAPANI)

---

[2]The named plaintiffs are the Board and Association. For simplicity purposes, we will refer to the plaintiff as the Board, because the Board is the governing body for the Association.

[3]*Wing Street of Arlington Heights Condominium Ass'n & The Board of Directors of Wing Street of Arlington Heights Condominium Ass'n v. Village Green, LLC, et al.* (Case Number 2010 L 004330).

[4]The eighth amended complaint spanned more than 100 pages.

62. The Board, in its representative capacity on behalf of unit owners, asserts a claim for breach of implied [sic] warranty of habitability against Village Green, LLC concerning the construction deficiencies in the common elements as set forth herein.

\*\*\*

67. The defects \*\*\* resulted in leaks that have caused substantial damages to common elements \*\*\* . The defects have also caused damage to interior drywall in Units, garage walls and ceilings, the garage ventilation system, the wall furnishings inside Units including but not limited to paint and wallpaper, window treatments inside Units, flooring inside of Units including but not limited to carpeting and wood floors, personal property inside Units, and interior furnishings of the Units.

\*\*\*

WHEREFORE, the Plaintiffs request that judgment be awarded in their favor and against Village Green LLC and that the Court pierce the corporate veil[5] and that judgment be awarded against \*\*\* Gregory B. Trapani, as follows:

\*\*\*

d. Damages in an amount equal to the full value of the personal property inside of Units damaged by these defects."

The same allegations of damage to the owners' units and requested relief for "damages in an amount equal to the full value of the personal property inside of Units damaged by these defects" raised in count VII against Village Green mirrors count XXV against Trapani Construction.

¶ 8    In November of 2009, the Association retained the engineering company of Wiss, Janney,

---

[5]The Board did not have any recourse against Village Green because it was insolvent.

Elstner Associates, Inc. (WJE) to investigate the cause of the water infiltration problems at the Condominium. WJE conducted its investigation between November 2009 and September 2015. After its investigation, WJE issued a report dated April 6, 2016, identifying numerous construction defects to the building's façade, common areas, and individual units, along with identifying the party responsible for the construction defects.

¶ 9        In June 2017, the Board settled the *Wing Street* litigation in return for $500,000, of which Trapani Construction paid $100,000 and National Fire paid $45,000 on behalf of its insureds, Village Green and Greg Trapani. In the "Settlement Agreement and Release" ("Settlement"), the Board released all claims related to the alleged construction defects that caused damage to "1) the common elements of the Building, 2) individual units in the Building, 3) to other property, and/or 4) personal items beyond the construction work itself."

¶ 10        As to insurance coverage, West Bend defended its named insureds against the counts raised in the *Wing Street* litigation. National Fire defended Village Green and Greg Trapani (as a member of Village Green) under a reservation of rights. Trapani Construction, Village Green, and Greg Trapani tendered the *Wing Street* litigation to West Bend, seeking a defense and indemnity as an additional insured on the CGL policy issued to subcontractor A.L.L. Masonry.[6]

¶ 11        West Bend filed a declaratory judgment action, which it later amended multiple times, asserting there was no coverage for the construction defects alleged against Village Green and Trapani Construction in the *Wing Street* litigation, because the allegations in the complaint did not allege "property damage" or an "occurrence" as defined by the policy. The trial court allowed National Fire to intervene in West Bend's declaratory judgment action, seeking contractual

---

[6] On October 9, 2013, Trapani Construction tendered the sixth amended complaint to West Bend. On February 25, 2014, Village Green and Greg Trapani tendered the seventh amended complaint to West Bend.

subrogation, equitable subrogation, and equitable contribution for the amounts it paid on behalf of Village Green and Greg Trapani to defend the *Wing Street* litigation. The parties filed cross-motions for summary judgment addressing whether the *Wing Street* complaint alleged "property damage caused by an occurrence" under the West Bend CGL policy. The trial court ruled that West Bend had a duty to defend Village Green and Trapani Construction, because the *Wing Street* litigation alleged "property damage caused by an occurrence," namely, damage to the unit owners' personal property.

¶ 12        The parties also filed cross-motions for summary judgment addressing West Bend's duty to indemnify the settlement payments made by Trapani Construction and National Fire. The trial court again ruled in favor of Trapani Construction and National Fire, finding that West Bend had a duty to indemnify because the settlement payments were for a "covered loss made in reasonable anticipation of liability." The parties stipulated to Trapani Construction and National Fire's defense and settlement costs, and the trial court entered judgment on the stipulated amounts. The trial court awarded prejudgment interest on both the defense costs and settlement (indemnity) payments to Trapani Construction and National Fire.

¶ 13                                ANALYSIS

¶ 14        The first issue on appeal is whether the trial court erred in granting summary judgment in Trapani Construction and National Fire's favor and against West Bend, finding that the *Wing Street* complaint pled "property damage caused by an occurrence."

¶ 15        The trial court properly grants summary judgment "where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Jones v. Pneumo Abex LLC*, 2019 IL 123895, ¶ 24. When "parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved

7

as a matter of law." *Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶ 18. We review the trial court's ruling on cross-motions for summary judgment *de novo*. *Better Government Ass'n v. City of Chicago*, 2020 IL App (1st) 190038, ¶ 9. The construction of an insurance policy presents a question of law that we also review *de novo*. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14.

¶ 16 An insurer's duty to defend is subject to general rules that have been articulated numerous times. To begin with, for an insurer to incur a duty to defend, "the complaint needs only to present a possibility of recovery, not a probability, for coverage to potentially exist." *Markel International Insurance Co. v. Montgomery*, 2020 IL App (1st) 191175, ¶ 39. An insurer may refuse to defend an action only if "it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000). To determine whether the insurer has a duty to defend, the court must "compare the allegations in the underlying complaint against the relevant policy language," both of which are liberally construed in favor of the insured. *Certain Underwriters at Lloyd's London v. Metropolitan Builders, Inc.*, 2019 IL App (1st) 190517, ¶¶ 27, 28.

¶ 17 Having compared the facts alleged in the *Wing Street* complaint against the CGL policy's coverage provisions for "property damage," we find that the underlying complaint pled property damage caused by an occurrence falling within, or potentially within, the policy's coverage. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). Specifically, the complaint alleged damage to the inside wall furnishings, flooring, personal property, and interior furnishings of unit owners, which constituted "physical injury to tangible property" and not an economic loss. See *Metropolitan Builders, Inc.*, 2019 IL App (1st) 190517, ¶ 65 (property that extends beyond the property the contractor worked on must be altered in appearance in some measurable way for there to be "property damage").

¶ 18        Likewise, we find that an "occurrence" was sufficiently pled in the underlying complaint, because the damages alleged to the personal property of the unit owners "was not to the actual property the insured was working on," but "damage to something other than the project itself." See *id.* ¶ 53 ("allegations of water damage to a homeowner's furniture, clothing and antiques *would* trigger coverage under a CGL policy, because that damage extends beyond the contractor's work product to the homeowner's personal property.") (Emphasis in original.) "This court has repeatedly stated that damage to something other than the project itself *does* constitute an 'occurrence' under a CGL policy." (Emphasis in original.) *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 2011 IL App (1st) 10136, ¶ 27. West Bend had a duty to defend because the requested relief for the damages to the unit owners' tangible personal property was beyond the cost to repair or replace the faulty workmanship that caused water to infiltrate into the Condominium causing damage. *Acuity Insurance Co. v. 950 W. Huron Condo. Ass'n*, 2019 IL App (1st) 180743, ¶ 29; see *Metropolitan Builders, Inc.*, 2019 IL App (1st) 190517, ¶ 56 (damage to property other than the contractor's work product is considered an "accident" and deemed to be an "occurrence" triggering coverage under a CGL policy).

¶ 19        Nonetheless, West Bend argues that the Board lacked standing to sue on behalf of the unit owners, who were not parties to the *Wing Street* lawsuit and only represented the unit owners' interests to the extent that the Board sought to recover damages to the common elements.

¶ 20        Contrary to West Bend's position, the Board was not "asserting claims in a representative capacity *only* for the common elements damage." (Emphasis in original.) The underlying complaint not only alleged damage to the unit owners' tangible personal property, but the counts brought against Trapani Construction and National Fire's insureds explicitly sought "[d]amages in an amount equal to the full value of the personal property inside of Units damaged." In the underlying complaint, the Board asserted that it was "a proper party for and on behalf of the unit

owners *** to institute the instant proceedings." The Board sought additional relief that extended beyond the damage to the common elements, and the factual allegations relating to the personal property damage were not tangential nor did they merely bolster the Board's claims of damage to the common elements. Moreover, West Bend did not raise a standing issue when the Board filed the seventh amended complaint adding the unit owners' personal property damage to the breach of warranty of habitability theory of recovery. See *Guns Save Life, Inc. v. Ali*, 2020 IL App (1st) 181846, ¶ 21 (lack of standing is an affirmative defense). Regardless of any standing issue, West Bend had a duty to defend against allegations potentially falling within coverage "even if the allegations are groundless, false, or fraudulent." *Swiderski Electronics, Inc.*, 223 Ill. 2d at 363; see *Great American E & S Insurance Co. v. Power Cell LLC*, 356 F. Supp. 3d 730, 741, n4 (N.D. Ill. 2018) ("No Illinois case of which this court is aware exempts claims with standing issues from the general rule that insurers must defend even against 'groundless, false, or fraudulent' claims.")

¶ 21        West Bend's reliance on *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862, is misplaced. In *Westfield*, the Association filed suit against the developer and roofing subcontractor seeking reimbursement for expenses incurred to repair a defective roof installed by the roofing subcontractor that caused water damage to the condominium building, including the common elements and unit owners' personal property. *Id.* ¶¶ 4, 6. The developer, named as an additional insured under the roofing subcontractor's CGL policy, tendered the defense to the subcontractor's insurance carrier, who declined to undertake the defense. *Id.* ¶¶ 3, 7. In affirming the trial court's ruling in favor of the insurance company, this court found that "the complaint did not seek damages for any personal property damage." *Id.* ¶ 20. This court reasoned that the "allegations of personal property damage were not offered for the purpose of recovery [but] were purely tangential to the Condo Association's claim for damages for repair and remediation of the roof." *Id.* ¶ 22.

¶ 22        Unlike *Westfield*, the Board expressly requested relief for the damage to the unit owners' personal property, which were separate from the cost to repair or replace the damages resulting from the faulty workmanship in constructing the Condominium, and those damages were not to recoup for economic losses. *Westfield* is also distinguishable because here, the Board purported to act on behalf of the unit owners throughout the underlying complaint. See *contra id.* ¶ 23 ("While the condo association might have had the capacity to represent the individual unit owners, nowhere in the complaint did it purport to do so.")

¶ 23        In sum, West Bend had a duty to defend because the *Wing Street* complaint alleged damage to the unit owners' tangible personal property that fell within or potentially within the CGL policy coverage for "property damage [ ]caused by an occurrence." Thus, the trial court properly granted summary judgment in Trapani Construction and National Fire's favor and against West Bend on the duty to defend issue.

¶ 24        West Bend next argues that the trial court erred in granting summary judgment in favor of Trapani Construction and National Fire, finding it had a duty to indemnify the amounts paid to settle the *Wing Street* litigation. West Bend claims that summary judgment should have been granted in its favor because the settlement costs were not incurred for "a covered loss made in reasonable anticipation of liability."

¶ 25        As stated, we review the trial court's ruling on cross-motions for summary judgment *de novo*, because the parties agree that there is no genuine issue of material fact and seek resolution of a legal issue. *City of Chicago*, 2019 IL 124469, ¶ 18.

¶ 26        The duty to indemnify is narrower than the duty to defend. *Rosalind Franklin University of Medicine & Science v. Lexington Insurance Co.*, 2014 IL App (1st) 113755, ¶ 80. An insurer has a duty to indemnify "only where the insured becomes legally obligated to pay damages in the underlying action that gave rise to the policy claims, such as when the underlying parties settle."

11

*Maryland Casualty Co. v. Dough Management Co.*, 2015 IL App (1st) 141520, ¶ 49. In the context of a settlement, a duty to indemnify arises if the "settlement was made in reasonable anticipation of liability for an otherwise covered loss." *Id.*

¶ 27　　　　Here, Trapani Construction and National Fire's settlement costs related to a covered loss. The Settlement released National Fire's insureds and Trapani Construction from the breach of warranty counts asserted against them by the Board that were covered under the CGL policy. Also, the resulting damage to owners' tangible personal property went beyond the construction work itself. Damage to the property of others is the type of "property damage" covered under the West Bend CGL policy. See *J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, ¶ 19 (the intended purpose of a CGL policy is "to protect the insured from liability for injury or damage to the persons or property of others."). Moreover, the damage to the unit owners' personal property was not speculative, but substantiated in WJE's engineering report. Thus, the damage to the personal property of the unit owners was a covered loss, entitling Trapani Construction to be indemnified for the amount it paid to settle the *Wing Street* litigation. The same is true as to National Fire's right to subrogation for the amount it paid to settle the claims on behalf of its insureds. See *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (1992) (a party asserting "a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce").

¶ 28　　　　Because the settled breach of warranty claims were covered under the CGL policy, the "primary focus" test, which requires a determination of whether a covered claim is the primary focus of the settlement when both covered and noncovered claims are asserted (*Lexington Insurance Co.*, 2014 IL App (1st) 113755, ¶ 81), is inapplicable. Similar to its arguments regarding the duty to defend, West Bend argues that damage to the unit owners' personal property was not a covered loss because the unit owners were not parties to the underlying litigation and the Board

lacked authority to settle claims on their behalf. But as stated, the Board purported to act on behalf of the unit owners, which naturally included settling the claims.

¶ 29     Also, the evidence in the record supports a finding that Trapani Construction and National Fire's insureds reached a settlement with the Board "in reasonable anticipation of liability." Even apart from the allegations pled in the underlying complaint regarding the damage to personal property, the Board hired an engineering firm to investigate the alleged construction defects. The engineering report specified the units by unit number that incurred property damage, identified the responsible party, and detailed the damage incurred, including damage to the units' interior finishes. More than a year after the engineering report was completed, the parties executed the *Wing Street* Settlement. The engineering report supports a finding not only that the damage to the unit owners' property was a covered loss, but that Trapani Construction and National Fire's insureds reached a settlement in the underlying action in reasonable anticipation of incurring liability for that damage. See *U.S. Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 627 (1994) (the reasonableness of an insurer's anticipation of liability turns on the quality and quantity of proof that would be offered against the insured in the underlying litigation). Thus, West Bend had a duty to indemnify Trapani Construction and to subrogate National Fire for the amounts paid to settle the *Wing Street* litigation.

¶ 30     Finally, West Bend argues that the trial court abused its discretion in awarding Trapani Construction and National Fire prejudgment interest, because (1) prejudgment interest was not requested in the complaint and (2) the defense costs were not liquidated or easily computed.

¶ 31     Section 2 of the Illinois Interest Act (815 ILCS 205/2 (West 2018)) provides to a creditor prejudgment interest at a rate of 5% per year for "all moneys after they become due on any bond, bill, promissory note or other instrument of writing." An insurance policy is considered an "other instrument of writing" within the meaning of the Insurance Act. *Old Second National Bank v.*

*Indiana Insurance Co.*, 2015 IL App (1st) 140265, ¶ 38. To be awarded prejudgment interest, "the amount due must be liquidated or subject to an easy determination by calculation or computation." *Lyon Metal Products, L.L.C. v. Protection Mutual Insurance CO.,* 321 Ill. App. 3d 330, 348 (2001). An amount due is considered unliquidated if it requires " 'judgment, discretion, or opinion, as distinguished from calculation or computation.' " *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶ 71 (quoting *Dallis v. Don Cunningham & Associates*, 11 F. 3d 713, 719 (7th Cir. 1993)). A trial court's award of prejudgment interest is reviewed for an abuse of discretion. *Id.* We will find an abuse of discretion "where no reasonable person would take the position adopted by the circuit court." *Peach v. McGovern*, 2019 IL 123156, ¶ 25.

¶ 32        Here, the trial court did not abuse its discretion in awarding prejudgment interest. Trapani Construction and National Fire incurred costs to defend as early as 2013 and 2014, respectively, after West Bend wrongfully refused to provide a defense in the underlying litigation. Even though Trapani Construction and National Fire defended the underlying action for numerous years, prejudgment interest was only awarded beginning from the settlement date in May of 2017. It is of no consequence that Trapani Construction and National Fire did not initially request prejudgment interest in their pleadings, because a request for interest, where applicable, will be read into the complaint. *Kehoe v. Wildman, Harrold, Allen & Dixon*, 387 Ill. App. 3d 454, 473 (2008).

¶ 33        Likewise, the amounts Trapani Construction and National Fire paid in defense costs in the underlying litigation were "subject to easy determination by calculation or computation." The defense costs did not require "judgment, discretion, or opinion," but were based on tendered invoices, which West Bend reviewed and ultimately stipulated to the amount of defense costs on which the prejudgment interest was applied. Moreover, the agreed to exclusion of certain coverage

related costs from the tendered invoices did not render the defense costs unliquidated. Thus, the trial court properly awarded prejudgment interest on the defense costs.

¶ 34                                                     CONCLUSION

¶ 35        We affirm summary judgment in favor of Trapani Construction and National Fire and against West Bend as to West Bend's duty to defend and duty to indemnify. We also affirm the award of prejudgment interest to Trapani Construction and National Fire.

¶ 36        Affirmed.