A.D. DESMOND COMPANY, f/k/a Desmond Construction Company, Inc., *et al.*, Plaintiffs-Appellants, v. JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellee.

Second District No. 2—91—0447

Opinion filed January 16, 1992.

Daniel G. Coman and Bruce L. Goldsmith, both of Goldsmith, Thelin, Schiller, Dickson & Brown, of Aurora (Bruce A. Brown, of counsel), for appellants.

Zoran Dragutinovich, Jerome H. Torshen, Ltd., and James K. Genden, all of Torshen, Schoenfield & Spreyer, Ltd., of Chicago (Mark K. Schoenfield, of counsel), for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, A.D. Desmond Company (Desmond Company) and its shareholders, brought this action to recover life insurance proceeds allegedly owed to them by defendant, Jackson National Life Insurance Company (Jackson), upon the death of Albert D. Desmond (Insured). The individual shareholder-plaintiffs are Josephine Desmond, widow of Albert Desmond; Nancy Delaney and Lana Conklin, Albert Desmond's daughters, in their capacity as trustees of the Albert D. Desmond Trust; and Al Withey, a long-time Desmond Company employee. Plaintiffs appeal from orders of the circuit court of

Kane County which granted summary judgment in favor of Jackson Life and denied plaintiffs' motion to reconsider.

The following undisputed facts emerge from the record of this case. On August 5, 1987, Albert D. Desmond, then president and principal shareholder of Desmond Company, applied to Jackson Life for a $500,000 life insurance policy. The application indicates that Desmond Company was named as the primary beneficiary of the policy. Jackson Life executed and delivered the requested policy to the Insured on September 18, 1987. Albert Desmond died on February 18, 1988, when the recently purchased experimental aircraft he was flying crashed into a farm field. Plaintiffs then became all of the shareholders of Desmond Company. As such, they became entitled to a share of the assets of the company upon its dissolution later in 1988.

Desmond Company, as beneficiary of Albert Desmond's life insurance policy, notified Jackson Life of the death of the Insured and filed a claim for the insurance benefits. The insurer denied coverage on the ground that Albert Desmond had made material misrepresentations in the application he had submitted for insurance. Specifically, defendant asserted that the Insured failed to disclose that he had flown ultra-light planes and had owned a retail distributorship for such planes. According to the record, an ultra-light aircraft is one which typically weighs less than 225 pounds, has one or two seats, does not require a pilot's license to operate, and is basically a motorized recreational flying machine.

Jackson Life asserted the Insured's alleged misrepresentations as an affirmative defense in its answer to plaintiffs' complaint. The trial court granted plaintiffs' subsequent motion for summary judgment as to this issue on the basis that the insurance application required disclosure of such activities during the preceding two years, whereas the Insured's involvement with the ultra-light retail operation had ended more than two years prior to his application for insurance.

Jackson Life later filed a motion for summary judgment of its own in which it again claimed that the Insured had made material misrepresentations in his application for insurance. This time defendant focused on evidence which tended to show that in 1983 Albert Desmond had personally built and/or assembled, and flown, an ultra-light plane which he considered to be an experimental aircraft. Defendant argued that the Insured misrepresented his aviation experience when he indicated, in response to question No. 14 of a questionnaire completed by him, that he had not flown experi-

mental or personally built or assembled aircraft of any type. The trial court ultimately granted the motion, and this appeal followed.

As a preliminary matter, we note that Jackson Life filed an affirmative defense asserting that, at the time he applied for insurance, the Insured also misrepresented an intent to fly experimental aircraft in the future. The parties acknowledge that this issue was not raised in the summary judgment motions and was not addressed by the trial court. Thus, the issue on appeal revolves around the Insured's answer to question No. 14 only to the extent that it addressed past events.

Plaintiffs posit that the Insured was under no obligation to report his 1983 flight since it was made in an ultra-light aircraft, and question No. 14 was not addressed to ultra-lights. Alternatively, plaintiffs claim the query set forth in question No. 14 was limited to the two years preceding the time of the 1987 application and, thus, did not apply to the 1983 flight. Defendant did not allege that misrepresentations were made regarding any activities during the two years prior to 1987. Plaintiffs conclude that the Insured gave a truthful answer to question No. 14. Defendant responds that question No. 14, by its own terms, clearly and unambiguously applied to any experimental or personally built or assembled planes flown by the Insured at any time in the past, even if the plane also happened to be an ultra-light. Resolution of this dispute requires us to determine just what information was asked for in question No. 14.

■■ Summary judgment should be granted where no genuine issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Dairyland Insurance Co. v. Linak* (1991), 208 Ill. App. 3d 892, 894-95.) Where, as here, the facts are not in dispute, the construction of an insurance policy is a matter of law which may properly be determined by summary judgment. (*Dairyland*, 208 Ill. App. 3d at 895; *Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682, 686.) Since it is a question of law, the interpretation to be given an insurance policy may be decided by a reviewing court independent of the trial court's judgment. *Dairyland*, 208 Ill. App. 3d at 895; *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 1021.

When, as in this case, an insurance policy is issued which makes the application for insurance part of the policy, the application becomes and is construed as part of the entire insurance contract. (*New York Life Insurance Co. v. Rak* (1962), 24 Ill. 2d 128, 131; *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App.

3d 752, 755.) The rules of construction applicable to contracts generally are also applicable to contracts of insurance. *Butler*, 199 Ill. App. 3d at 1021; *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 370.

■ Insurance forfeitures are not favored as insurance serves important purposes in contemporary society, and courts should be quick to find facts which support coverage. (*Bellmer*, 140 Ill. App. 3d at 755.) Thus, if a provision in a policy is ambiguous it will be construed in favor of the insured (*Strzelczyk v. State Farm Mutual Automobile Insurance Co.* (1986), 113 Ill. 2d 327, 331) and against the insurer as drafter (*Hartford Insurance Co. v. Jackson* (1990), 206 Ill. App. 3d 465, 470). A contract will be considered ambiguous if it is susceptible to more than one reasonable meaning. (*Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 107.) A provision in an insurance policy may appear clear on its face and yet contain latent ambiguity. (*Monsalud*, 210 Ill. App. 3d at 107.) To determine the existence of ambiguity in an insurance policy the court must examine the entire policy and construe pertinent parts in light of the whole document. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5; *Monsalud*, 210 Ill. App. 3d at 107.) Viewed in light of these principles, question No. 14 must be interpreted favorably to Albert Desmond, the Insured.

In addition to the sections requesting biographical and medical data, the insurance application contained a "Special Activities" section, section VIII, which asked the following questions:

"HAS ANY PERSON PROPOSED FOR INSURANCE:

(a) Flown as a Student, Private, Commercial or Military pilot within two years?

(b) Are any such flights planned in the future? (If 'a' or 'b' is 'yes', complete Aviation Activities Questionnaire.)

(c) Engaged in any form of motorized racing in the past two years? (If so, complete Hazardous Activities Questionnaire.)

(d) Engaged in any form of underwater diving, sky diving, ultra-light flying, hang gliding or other hazardous activity in the past two years? (If so, complete Hazardous Activities Questionnaire.)

(e) Intend to travel or reside outside the United States or Canada within the next year? (If 'yes', give details in Remarks.)"

As can be seen, parts (a) and (b) referred to an applicant's past experience and future intent as a pilot. Part (a) listed the pertinent categories of pilots. In contrast, part (d) was concerned with an applicant's participation in certain activities which, by their very nature, present peculiar or heightened risks. Part (d) expressly included "ultra-light flying" in its list of hazardous activities.

Since Albert Desmond answered parts (a) and (b) affirmatively, he also completed the "Aviation Activities Questionnaire," as required by part (b). That document asked a series of questions related primarily to the applicant's status and experience as a pilot, the status of his pilot certificate, the kinds of aircraft flown, and the nature of his flying. Question No. 14 specifically asked:

> "14. Have you flown or do you intend to fly a prototype, experimental or personally built or assembled aircraft of any type?"

Desmond gave a negative response.

Defendant insists that the Insured should have disclosed his 1983 flight pursuant to question No. 14. However, the particular aircraft involved in that flight, while it may have been experimental or personally built, was also an ultra-light. Part (d) of the "Special Activities" section of the application had already explicitly asked about ultra-light flying and, if the applicant had such experience, he was directed to complete the "Hazardous Activities Questionnaire," *not* the "Aviation Activities Questionnaire." It was only part (b) which required an applicant to complete the "Aviation Activities Questionnaire," and part (b) referred to flights made as a pilot, as set forth in part (a). Part (a) contains no indication whatsoever that it is requesting information about any ultra-light flights. We think the structure of the application could lead an applicant to think that ultra-light experience needed to be reported pursuant to only one part—part (d), the hazardous activities portion—of the application while all other flying experience was to be reported pursuant to another part—parts (a) and (b), the piloting portion—of the application. Since completion of the aviation questionnaire was required only pursuant to parts (a) and (b), it would be reasonable to conclude that the questionnaire, including question No. 14, pertained only to the piloting activities named in part (a) and did not apply to ultra-light flights.

Even if an applicant thought the inquiry in question No. 14 included past ultra-light activity, the application and questionnaire taken together could have been understood to limit the inquiry to the two prior years. Three out of the five questions in the "Special

Activities" section of the application itself request information regarding the applicant's past activities. In each instance the request extends to only the preceding two years. It is true that some of the questions in the aviation questionnaire evidently ask about an applicant's aviation history without any time limitations. For example, questions No. 1, 9 and 11, respectively, ask if the applicant has "ever" been issued a pilot certificate, been medically grounded, or had his pilot certificate suspended or revoked. However, question No. 13 then asks for the types of aircraft flown "within the past 12 months." This is followed immediately by question No. 14, which neither sets forth a specific time limit nor asks if the applicant has "ever" flown experimental or personally built aircraft. Finally, at the bottom of the one-page aviation questionnaire is found the table as it was filled in by Albert Desmond (see figure No. 1). Notably, none of the categories of aviation activities asks for disclosure beyond the two prior years, not even the "Experimental or testing" category.

■ In sum, the application itself clearly requires disclosure of past activities only for the two prior years. The questionnaire, in substantial part, also asks about the past two years. Only three questions address an applicant's history in its entirety. Question No. 14 does not indicate how far back it looks, but we think an applicant could reasonably believe, based on the other questions, that he was obliged to report only on the last two years, particularly in light of the two-year scope of the "Experimental or testing" category in the table of the questionnaire.

We conclude that question No. 14 standing alone could, as defendant urges, be interpreted as requiring disclosure of *all* experience flying experimental or personally built or assembled aircraft, including any flights in ultra-lights, without regard to when such flights occurred. On the other hand, when considered in the context of the questionnaire and the application in their entirety, as it must be (*Schnackenberg*, 88 Ill. 2d at 5), question No. 14 could be interpreted as inapplicable to *any* flights in ultra-light aircraft since such experience was elicited in section (d) of the application. Alternatively, question No. 14 could be understood to mean that disclosure was required only to the extent of the prior two years.

Inasmuch as the language of the application and questionnaire is ambiguous, we must construe it favorably to the insured (*Strzelczyk*, 113 Ill. 2d at 331). Consequently, we find that question No. 14's request for information encompassed, at most, only the preceding two years, and the Insured, therefore, was not obligated

to report a flight made four years earlier, in 1983. Albert Desmond answered truthfully when he indicated that he had not flown experimental or personally built aircraft within the past two years. Absent the misrepresentation alleged by the insurer, defendant was not entitled to summary judgment as a matter of law.

In light of our conclusion that the Insured did not make misrepresentations when completing the application for insurance, we need not consider the other issues plaintiffs raise on appeal.

For the reasons set forth above, the order of the circuit court of Kane County granting summary judgment in favor of defendant is reversed, and the matter is remanded for further proceedings.

Reversed and remanded.

UNVERZAGT and GEIGER, JJ., concur.

APPENDIX

FIGURE NO. 1

NATURE OF AVIATION ACTIVITY BY HOURS

| | 1-2 Yrs. Ago | Past 12 mos. | Next 12 mos. | | 1-2 Yrs. Ago | Past 12 mos. | Next 12 mos. | | 1-2 Yrs. Ago | Past 12 mos. | Next 12 mos. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Private Flying or Pleasure Flying | 80 | 10 | 10 | Student | 0 | 0 | 0 | Other | | | |
| Non-scheduled airline | 0 | 0 | 0 | Crop Treatment | 0 | 0 | 0 | (describe fully) | | | |
| Company-owned plane | 0 | 0 | 0 | Charter, air taxi | 0 | 0 | 0 | | | | |
| Flight instructing | 0 | 0 | 0 | Experimental or testing | 0 | 0 | 0 | | | | |