In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2009

WESTFIELD INSURANCE COMPANY,
an Ohio corporation,

*Plaintiff-Appellee*,

*v.*

SCOT VANDENBERG, *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-00040 — **Harry D. Leinenweber**, *Judge*.

ARGUED DECEMBER 9, 2014 — DECIDED AUGUST 6, 2015

Before POSNER, RIPPLE, and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Scot Vandenberg was injured when
he fell from the upper deck of a yacht anchored in Lake
Michigan. He filed suit in Illinois state court, alleging that
the owners and operators of the yacht were negligent. He
eventually settled with the defendants. Under the settlement
agreement, the defendants agreed to pay Mr. Vandenberg
$25 million through the assignment of their claims against

their insurers. Westfield Insurance Company ("Westfield") was the insurance provider for Rose Paving Company ("Rose Paving"), one of the defendants. Westfield disputed that its insurance policies with Rose Paving covered the yacht accident and brought a declaratory judgment action in the district court. Mr. Vandenberg, as the assignee of Rose Paving, opposed the action. The district court granted Westfield's motion for judgment on the pleadings; it decided that the Westfield policies did not provide coverage for Mr. Vandenberg's injury. Mr. Vandenberg asks that we review that determination. We now hold that the accident occurring on the yacht is not covered by the insurance policies and accordingly affirm the district court's judgment.

# I

# BACKGROUND

## A.

In September 2009, Mr. Vandenberg was attending a five-hour cruise on a chartered yacht when he fell from the upper deck. The accident occurred when he turned to respond to someone calling his name and, as he shifted his weight, the bench upon which he was sitting tipped over. The bench was not secured to the deck, nor did the upper deck have a railing. The fall left Mr. Vandenberg paralyzed from the chest down. The yacht was owned by RQM, Inc. ("RQM"), a closely held corporation owned by Michael Rose, Carl Quanstrom, and Alan Rose. Mr. Vandenberg alleged that Rose Paving, a company run by Alan Rose, was a booking agent that maintained a marketing relationship for the chartering of the yacht.

At the time of the accident, Rose Paving was insured by Westfield under a commercial general liability ("CGL") policy and by an umbrella policy (collectively "the policies"). The application for the CGL policy listed as insureds Rose Paving Co., Rose Paving & Seal Coating Inc., and Bridgeview Investments.[1] This application included a "schedule of hazards," which listed "concrete construction," "Contractors Executive Supervisors," and "subcontractors."[2] The application also asked whether the applicant owned, hired, or leased any watercraft. Rose Paving marked the "no" box.[3] The umbrella section of the application similarly asked whether the applicant owned or leased a watercraft. Rose Paving did not answer that question.

The insurance contract included "common policy declarations" applicable to both the CGL and umbrella policies, which listed Rose Paving's business as "concrete construction."[4] The CGL policy declarations also contained a "general liability schedule," which listed the premises and operations covered by the contract and included "contractors" and "subcontracted work—in connection with construction, reconstruction, repair or erection of buildings."[5] The CGL and

---

[1] Bridgeview Investments was listed as an additional insured in its capacity as the manager or lessor of Rose Paving's business premises.

[2] R.56-2 at 49.

[3] *Id.* at 50.

[4] R.56-1 at 54.

[5] *Id.* at 60. The CGL policy declarations determine the scope of both policies. Although the umbrella policy did not contain a similar liability

(continued…)

umbrella policies further provided that Westfield would be legally obligated to pay for damages "to which this insurance applies."[6] They then listed certain exclusions, including liability that "aris[es] out of the ownership, maintenance, use or entrustment to others of any … watercraft owned or operated by or rented or loaned to any insured."[7] Finally, the policies provided that, by accepting coverage, Rose Paving agreed that "[t]he statements in the Declarations are accurate and complete," that "[t]hose statements are based upon representations" Rose Paving made to Westfield, and that Westfield "issued th[e] policy in reliance upon [those] representations."[8]

## B.

Before Westfield filed this declaratory action, the parties had commenced several actions, the particulars of which are not pertinent to our decision today.[9] Mr. Vandenberg

---

(…continued)

schedule, it applied only if Westfield had been "obligated to pay the 'retained limit'" under the CGL policy. R.56-2 at 25; *see also id.* at 29 ("'Retained limit' means the available limits of 'underlying insurance' scheduled in the Declarations … .").

[6] R.56-1 at 68 (CGL policy); R.56-2 at 13 (umbrella policy).

[7] R.56-1 at 78; R.56-2 at 15.

[8] R.56-1 at 86; R.56-2 at 25.

[9] To summarize briefly, in March 2010, Mr. Vandenberg filed an action against RQM in the Circuit Court of Cook County, Illinois, seeking to recover money damages for his injuries. In August 2010, RQM filed a maritime action in federal court seeking exoneration from liability for the

(continued…)

ultimately entered into a settlement agreement with the defendants, disposing of the then-pending state court and maritime actions. Under this agreement, Rose Paving, along with Carl Quanstrom, Michael Rose, Alan Rose, Dough Management, and Location Finders International, agreed to pay $25 million, to be satisfied solely through an assignment of their rights of recovery under their insurance policies. Rose Paving, Michael Rose, and Alan Rose agreed to pay an additional $300,000 directly, and RQM's insurer agreed to pay $2 million. The settlement agreement was accepted by the Circuit Court of Cook County, Illinois, on October 10, 2012.

---

(…continued)

accident or a limitation of liability to the value of the yacht. The district court enjoined Mr. Vandenberg from pursuing his claims against RQM and ordered the parties to refrain from filing additional lawsuits. Mr. Vandenberg then dismissed his first state court action. In August 2011, Mr. Vandenberg filed a second suit in the Circuit Court of Cook County, Illinois. He alleged that the defendants were negligent because they failed to provide railing or other protection on the top deck, allowed Mr. Vandenberg to access the top deck of the yacht, failed to warn about the lack of railings, and "[a]llowed a bench to be placed inches from the rear of the unrailed top deck." R.56-1 at 41. The district court overseeing RQM's maritime action ordered Mr. Vandenberg to stay his state court action.

Mr. Vandenberg also provided Westfield with an unfiled amended complaint five months before settlement. The amended complaint included allegations that Rose Paving negligently owned, maintained, or used an unstable bench. The stay imposed by the district court in RQM's maritime action prevented Mr. Vandenberg from filing the amended complaint.

In January 2012, Westfield filed this declaratory action. It sought a determination that it owed no duty under Rose Paving's insurance policies to defend or to indemnify any of the defendants in the state court action. Westfield alleged that the policies did not cover the underlying accident because the operation of a seventy-five-foot yacht fell outside the scope of the risks and liabilities for which the policies provided coverage. Alternatively, Westfield maintained that the "watercraft exclusion" barred coverage and that Rose Paving's conduct released Westfield from contractual liability under the policies.

Westfield filed a motion for judgment on the pleadings. Mr. Vandenberg, as the assignee of Rose Paving, responded with a combined response and cross-motion for summary judgment. The district court granted Westfield's motion for judgment on the pleadings and denied Mr. Vandenberg's motion for summary judgment. The court concluded that the insurance policies covered only Rose Paving's construction business. The court relied on the business description provided in the common policy declarations, the "schedule of hazards" listed in the application, and Rose Paving's representation that it did not own, hire, or lease any watercraft.

The district court later denied Mr. Vandenberg's motion to alter the judgment under Federal Rule of Civil Procedure 59(a). Mr. Vandenberg now appeals the court's

decision granting Westfield's motion for judgment on the pleadings.[10]

## II

## DISCUSSION

Mr. Vandenberg asks us to review the district court's decision on the scope of the Westfield insurance policies. He maintains that the policies provide coverage for his injuries because of the broad terms employed in the text. More precisely, he takes the view that, because the Westfield policies do not exclude expressly accidents such as the one on the yacht, the accident and his injuries are covered. Westfield responds that the policies apply only to Rose Paving's construction business and, in the alternative, that the accident falls under the watercraft exclusion contained in the policies.[11]

The interpretation of an insurance policy is a matter of state law. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013). Because the parties agree that Illinois law applies, we look to the

---

[10] The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[11] Westfield also maintains that it never breached its duty to defend Rose Paving because it filed a declaratory action and that it is not bound by the settlement because the settlement was overtly collusive, breached multiple policy conditions, and forfeited coverage. Because we decide that Westfield prevails under its first two theories, we do not address its remaining contentions.

decisions of the Supreme Court of Illinois for guidance. *See id.* We review de novo the district court's decision granting a Rule 12(c) motion for judgment on the pleadings. *See Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co.*, 649 F.3d 539, 547 (7th Cir. 2011). For the reasons set out more fully below, we agree with the district court that the policies do not provide coverage for Mr. Vandenberg's accident. We also conclude that Rose Paving's use of the yacht was excluded from coverage by the policies' watercraft exclusion.

## A.

We first address the scope of the Westfield insurance policies. Mr. Vandenberg makes two major arguments to support his interpretation of the policies. First, he submits that the business designation, on its own, is insufficient to limit the scope of the policies. Second, he contends that, under Illinois law, an insurer must "expressly exclude" a risk from the insurance policy if the insurer does not intend to insure against that particular risk.[12] He therefore maintains that because the Westfield policies do not expressly exclude non-construction-related injuries, the policies provide coverage.

Under Illinois law, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). When interpreting an insurance policy,

---

[12] Appellant's Br. 26.

"our primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*; *accord Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1078 (Ill. 1993) ("[T]he primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement."). To achieve that goal, we "must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp.*, 620 N.E.2d at 1078; *accord Oakley Transp., Inc. v. Zurich Ins. Co.*, 648 N.E.2d 1099, 1106 (Ill. App. Ct. 1995) (noting that "an insurance policy is not to be interpreted in a factual vacuum and without regard to the purpose for which the insurance was written").

After reviewing the insurance application and the terms of the policies, we conclude that the district court correctly determined that Westfield and Rose Paving intended to enter into an insurance agreement under which Westfield provided coverage only for Rose Paving's construction-related business. We begin with the actual text of the policies. In that respect, we first note that the policies' "common policy declarations" list Rose Paving's business as "concrete construction."[13] The "general liability schedule" also explains that Westfield is providing coverage for work done "in connection with construction, reconstruction, repair

---

[13] R.56-1 at 54.

or erection of buildings."[14] The policies thus reflect, explicitly, the parties' intent to insure only Rose Paving's construction business.

The situation before us today is closely akin to the one before the Appellate Court of Illinois in *Heritage Insurance Co. v. Bucaro*, 428 N.E.2d 979 (Ill. App. Ct. 1981). There, the court determined that similar representations were sufficient to limit the scope of an insurance policy. The court determined that the underlying insurance policy did not cover automobile acquisitions because "[t]he activities enumerated in the policy concern[ed] operations relating to automobile *dismantling*." *Id.* at 982 (emphasis in original). The court relied on the description of hazards, which "include[d] salvage or junking of parts, and store operations," and that the policy listed the insured's business as "Automobile Dismantling." *Id.* at 981. "Due to the limited nature of the policy purchased," the court concluded that it was "implausible to assume that protection was expected for liability of the type that has been created here." *Id.* at 982. The Illinois court's methodology and conclusion reinforces our view of the proper interpretation of the Westfield policies.

The insurance application also supports our interpretation. *See Dash Messenger Serv., Inc. v. Hartford Ins. Co. of Ill.*, 582 N.E.2d 1257, 1263 (Ill. App. Ct. 1991) (relying on the insurance application to determine the risks for which the parties contracted); *see also A.D. Desmond Co. v. Jackson Nat'l Life Ins. Co.*, 585 N.E.2d 1120, 1122 (Ill. App. Ct. 1992)

---

[14] *Id.* at 60.

("When, as in this case, an insurance policy is issued which makes the application for insurance part of the policy, the application becomes and is construed as part of the entire insurance contract."). The policies at issue here provide that Rose Paving agreed that "[t]he statements in the Declarations are accurate and complete," that "[t]hose statements are based upon representations" Rose Paving made to Westfield, and that Westfield "issued th[e] policy in reliance upon [those] representations."[15] Rose Paving stated in its application that it was engaged in the construction business. Consistent with that representation, the parties listed in the schedule of hazards the risks that they intended to cover, including "concrete construction," "Contractors Executive Supervisors," and "subcontractors."[16] Rose Paving's representations in the insurance application therefore reinforce our construction of the text of the insurance policies and our conclusion that the parties did not intend to cover an accident occurring on the yacht.

Mr. Vandenberg submits that it is inappropriate to rely on the business designation in the insurance contract. We need not determine whether, in all cases, Illinois courts would consider a business designation contained in an insurance policy, standing alone, to be a sufficient indication of party intent to circumscribe the scope of an insurance agreement. Here, our decision need not rely solely on the business designation. As we have noted earlier, the business designation *and* the general liability schedule contained in

---

[15] R.56-1 at 86; R.56-2 at 25.

[16] R.56-2 at 49.

the contract, as well as the incorporated representations in the insurance application, express, *uniformly*, the parties' intent to limit the scope of the insurance policies to Rose Paving's known business, construction. *See Heritage Ins. Co.*, 428 N.E.2d at 981–82 (holding that, because the description of hazards included only "Automobile Dismantling" and the business of the insured was listed as "Automobile Dismantling," "it is evident that the policy provides coverage only for occurrences arising out of specified activities [automobile dismantling] taking place on the insured premises"). The district court correctly recognized that Rose Paving "operated multiple independent businesses (paving and yacht charters), purchased insurance for only one of those businesses (paving), and later sought coverage for a different business (yacht charters)."[17] In this case, therefore, the business designation contained in the insurance contract, when read with the other evidence of the parties' intent, substantiates forcefully that the parties entered into an agreement to insure only Rose Paving's construction business.

Nor can we accept Mr. Vandenberg's contention that the policies provide coverage for any and all liabilities unless they are explicitly excluded. In assessing this submission, our task is, of course, to determine the intent of the parties, as expressed by the insurance policy. *See Hobbs*, 823 N.E.2d at 564; *Crum & Forster Managers Corp.*, 620 N.E.2d at 1078. Here, we believe that the text and structure of the policies makes clear that the parties intended to insure against the

---

[17] R.89 at 10.

risks of operating a construction company. If the parties intended to exclude a risk associated with running such a business, we would expect them to have recited that exclusion in the contract. A policy does not need to exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement. *See Dash Messenger Serv., Inc.*, 582 N.E.2d at 1263 (noting that an insurer should expressly exclude a risk from coverage "if an insurer does not intend to insure against a risk *likely to be inherent in the insured's business*" (emphasis added)). Because Rose Paving's policies were manifestly designed to cover only its construction business, however, we would not expect those policies to address risks not inherent in that business.[18] To hold otherwise would require

---

[18] Other courts, when faced with analogous circumstances, have adopted similar interpretations. *See Steadfast Ins. Co. v. Dobbas*, No. CIV. S-05-0632 FCD JFM, 2008 WL 324023, at *6 (E.D. Cal. Feb. 5, 2008) (holding that, because the policy describes the business of the insured as "Railroad Contractor" and "[t]he Declarations page tailored for this particular policy limited the coverage of the policy based upon the business description," the "policy unambiguously provide[d] coverage … *only* for injuries relating to the business of 'Railroad Contractor'" (emphasis in original)); *Gemini Ins. Co v. S & J Diving, Inc.*, 464 F. Supp. 2d 641, 650 (S.D. Tex. 2006) (holding that the insurance policy applied "only to marine survey operations" and not to the company's involvement with an outdoor rock concert because it would be unreasonable "to conclude that the policy covers any and all activity, not specifically excluded, when the insured negotiated as, and described itself to be, a marine operation"); *Cooper v. RLI Ins. Co.*, No. CV 9403617128, 1996 WL 367721, at *8 (Conn. Super. Ct. June 3, 1996) (holding that the CGL policy "does not provide coverage for accidents associated with business activity different from the business activity for which coverage was initially sought"); *cf. Phila. Indem. Ins. Co. v. 1801 W. Irving Park, LLC*, No. 11 C

(continued…)

the parties to conjure up and exclude explicitly any and all activities in which Rose Paving might engage. Such a speculative exercise in hypotheticals would be nonsensical.

In sum, Mr. Vandenberg has not provided a cogent rationale to support his conclusion that Westfield and Rose Paving intended to enter into an insurance contract of endless scope, covering any and all businesses operated by Rose Paving. Construing the policies as a whole, we conclude that both Westfield and Rose Paving intended that the insurance policies provide coverage only for Rose Paving's construction-related business. Accordingly, the policies do not provide coverage for Mr. Vandenberg's injury on the yacht.[19]

---

(…continued)

1710, 2012 WL 3482260, at *5 (N.D. Ill. Aug. 13, 2012) (holding that the insurance policy provided coverage because the insured "was a single entity that performed multiple services as a part of its condominium development business—which was a named insured on the Policies").

[19] Mr. Vandenberg also submits that, because the umbrella policy does not have the same limitations as the CGL policy, it was intended to apply beyond Rose Paving's construction business. He relies on the absence of a business description in the separate umbrella policy document. But, as Westfield points out, the identification of Rose Paving's business is contained in a document labeled "common policy declarations" that summarizes the entire agreement. R.56-1 at 54. Specifically, the document states that "this policy consists of the following coverage parts" and lists the "commercial umbrella coverage part." *Id.* Mr. Vandenberg fails to invite our attention to any documentation that would support a determination that Westfield, through the umbrella policy, intended to insure activities beyond Rose Paving's construction business.

**B.**

The policies' watercraft exclusion provides an independent basis for affirming the district court's judgment. The Westfield policies exclude from coverage "'[b]odily injury' … arising out of the ownership, maintenance, use or entrustment to others of any … watercraft owned or operated by or rented or loaned to any insured."[20] In his state court complaint, Mr. Vandenberg alleged that Rose Paving negligently had "[f]ailed to provide railing or equivalent protection of the top deck peripheral areas which were accessible to passengers," "[f]ailed to prevent SCOT VANDENBERG … from accessing the top deck of the yacht," "[a]llowed … SCOT VANDENBERG[] to access areas of the top deck which did not have railings or equivalent protection," "[f]ailed to warn … SCOT VANDENBERG[] of the lack of railings or equivalent protection on the top peripheral areas of the top deck," and "[a]llowed a bench to be placed inches from the rear of the unrailed top deck."[21]

---

[20] *Id.* at 78; R.56-2 at 15.

[21] R.45-1 at 8–9. In his unfiled amended complaint, Mr. Vandenberg alleged that Rose Paving negligently "[p]rovided a wobbly bench to be used by SCOT VANDENBERG from which he fell." R.13-1 at 4. However, an insurer's duty to defend is limited to those allegations contained in the operative complaint. *See Mass. Bay Ins. Co. v. Unique Presort Servs., Inc.*, 679 N.E.2d 476, 478 (Ill. App. Ct. 1997) ("It is well settled that the allegations of the complaint are dispositive of the insurer's duty to defend and not the findings of the underlying
(continued…)

Mr. Vandenberg submits that, under Illinois law, the negligent maintenance, ownership, and use of the bench was a concurrent cause of his injuries and, therefore, the watercraft exclusion does not preclude coverage. Westfield maintains that the watercraft exclusion bars coverage under the policies because the use of the yacht was intertwined inextricably with all theories of recovery.

We have recognized previously that, under Illinois law, an insurance policy does not provide coverage for claims that are "intertwined" with an excluded liability. *See Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC*, 562 F.3d 818, 822 (7th Cir. 2009). In *Nautilus*, we addressed whether a claim seeking compensation for property damage was barred by the insurance policy's contractor-subcontractor exclusion. *See id.* at 821–23. We concluded that "the presence of an alternative theory of relief … is insufficient to trigger coverage" when the plaintiff does not allege an "injury independent of the" injury sustained as a result of the excluded liability. *Id.* at 823. Thus, we found it determinative

---

(…continued)

litigation."); *Oakley Transp., Inc. v. Zurich Ins. Co.*, 648 N.E.2d 1099, 1102 (Ill. App. Ct. 1995) (noting that a "court must ordinarily confine its inquiry to a comparison of the allegations of the underlying complaint and the relevant provisions of the insurance policy in determining a duty to defend"). Indeed, the Appellate Court of Illinois recently decided that Mr. Vandenberg's unfiled complaint should not be considered under the doctrine of "true but unpleaded facts." *See Md. Cas. Co. v. Dough Mgmt. Co.*, No. 1-14-1520, 2015 WL 4002569, at *9 (Ill. App. Ct. June 30, 2015). The court held "that the self-serving allegations in an unfiled amended complaint cannot be presumed true and are not the type of facts intended to be covered by the true but unpleaded facts doctrine." *Id.*

that "the statutory claims in the underlying complaints [sought] recovery for the same loss as all the other claims—the property damage arising out of the faulty excavation performed by [the defendant's] contractors and subcontractor—and coverage for *that* property damage is excluded by the contractor-subcontractor exclusion." *Id.* at 822 (emphasis in original).

In reaching our conclusion in *Nautilus*, we relied, in part, on the decision of the Supreme Court of Illinois in *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 741 N.E.2d 253 (Ill. 2000). In *Northbrook*, the court held that a policy exclusion bars coverage for injuries associated with excluded conduct, even if a plaintiff proceeds under an alternative theory of recovery that implicates the excluded conduct only indirectly. The Illinois court explained:

> The policy excludes injuries arising from the school districts' use or operation of a motor vehicle. Allegations that the school districts inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes are nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle. Contrary to the appellate court's holding, the students' complaints failed to allege that the injuries arose from events wholly independent of any negligent operation of the bus. Northbrook therefore has no duty to defend the school districts in the underlying lawsuits.

*Id.* at 254–55 (citation omitted) (internal quotation marks omitted). Thus, in order to succeed, the allegations in Mr. Vandenberg's complaint must be "wholly independent of any negligent operation of the [watercraft]."[22] *Id.* at 254 (internal quotation marks omitted).

---

[22] The decisions of the Appellate Court of Illinois reflect the distinction between dependent and independent claims. *Compare Mass. Bay Ins. Co.*, 679 N.E.2d at 479 ("In this case, the underlying plaintiffs' count XXVII is specifically dependent upon the fact that their injuries occurred in a vehicle accident. This drug-testing regulation would not apply to the underlying plaintiffs' negligence action if their injuries had been caused by some instrumentality other than a vehicle. Thus, the negligence alleged in count XXVII is inextricably intertwined with the policy's excluded instrumentality, namely, the vehicle."), *with Mount Vernon Fire Ins. Co. v. Heaven's Little Hands Day Care*, 795 N.E.2d 1034, 1043 (Ill. App. Ct. 2003) ("[W]e find after reviewing the allegations in the underlying complaint that the victim's death resulted from nonvehicular conduct on the part of Heaven's Little Hands and its employees. The allegations in the complaint assert multiple theories of negligence including a failure to maintain a proper census of the children attending the day-care facility. Had Leon kept an accurate head count of the children inside the van or if someone inside Heaven's Little Hands had noticed Tyrelle's absence soon after the van in question had arrived at the day care facility, Tyrelle would not have died. In short, the van is the situs, rather than the cause, of Tyrelle's death."), *and Louis Marsch, Inc. v. Pekin Ins. Co.*, 491 N.E.2d 432, 437 (Ill. App. Ct. 1985) ("Thus if a trier of fact concluded that Marsch had failed in its duty to Chizmar under the Road Construction Injuries Act, the fact that the dump truck was the instrumentality which ultimately injured Chizmar would be but one of two concurrent causes of the injury, one excluded under the Aetna policy, the other not so excluded. If the liability of an insured arises from negligent acts which constitute non-auto-related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence."), *and U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 437 N.E.2d 663, 666 (Ill. App. Ct. 1982) ("In the present

(continued…)

The Appellate Court of Illinois recently reaffirmed these principles and applied them to the same state court complaint at issue here. In *Maryland Casualty Co. v. Dough Management Co.*, No. 1-14-1520, 2015 WL 4002569 (Ill. App. Ct. June 30, 2015), the court addressed whether an identically worded watercraft exclusion in an insurance contract barred coverage for the injuries that Mr. Vandenberg sustained on the yacht. *See id.* at *7. In that action, Maryland Casualty Co., the insurer that had provided coverage to Dough Management, maintained that it had no duty to defend or indemnify Dough Management under its insurance policy. *See id.* at *2–3. The court noted that the "policy specifically exclude[d] coverage for any bodily injury 'arising out of the ownership, maintenance, use, or entrustment to others of any … watercraft owned or operated by or rented or loaned to any insured.'" *Id.* at *7 (second alteration in original). The court concluded that "the Vandenbergs only alleged [in their state court complaint] that the insureds failed to properly maintain the yacht by failing to provide a railing on the top deck, allegations that fall squarely under the watercraft exclusion." *Id.* "Therefore, based on the personal injury complaint," the court continued, "the Vandenbergs' claims are excluded under the CGL policy." *Id.*

---

(…continued)

case, the complaint alleges negligent acts which are potentially within the coverage of the policy, such as the failure to adequately supervise the children and the negligent operation of the day care center. These alleged acts are separate and distinct from any allegations relating to the negligent operation of the automobile.").

With the guidance of the Appellate Court of Illinois, we reach the same conclusion. Mr. Vandenberg fell from the top deck of the yacht after the bench on which he was sitting tipped over. Because the top deck of the yacht did not have a railing, he fell a substantial distance, resulting in his injuries and paralysis. In his state court complaint, Mr. Vandenberg recognized that his injury would not have occurred if Rose Paving had provided a railing or prevented him from accessing the top deck of the yacht. Thus, the accident and Mr. Vandenberg's resulting injuries were not "wholly independent of" the negligent operation, maintenance, or use of the yacht. *Northbrook Prop. & Cas. Co.*, 741 N.E.2d at 254 (internal quotation marks omitted). Mr. Vandenberg's injuries therefore come under the policies' watercraft exclusion, and the policies do not provide coverage.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED